UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-22464-ALTMAN/Sanchez

**JANET L. SCHMIDT,** *et al.*,

    *Plaintiffs,*

v.

**JUAN C. ANTÚNEZ,** *et al.*,

    *Defendants.*

_____/

## ORDER DENYING MOTION TO COMPEL ARBITRATION

Our Plaintiffs, Janet L. Schmidt and John R. Fernstrom,[1] have sued our Defendants (two lawyers, Juan C. Antúnez and Kimberly Martinez-Lejarza) for "invasion of privacy—public disclosure of private facts[.]" Complaint [ECF No. 1] at 1. The Defendants ask us to stay these proceedings and compel arbitration based on a July 7, 2021 "engagement agreement" (the "Agreement") Schmidt entered into with the Defendants' law firm, Stokes McMillan Antúnez Martinez-Lejarza, P.A. (the "Firm"). Motion to Compel Arbitration ("Motion") [ECF No. 7] at 1.[2] After careful review, we **DENY** the Motion because the parties' dispute doesn't relate to the relevant arbitration clause.

### THE FACTS

On July 2, 2021, the Plaintiffs removed "a deed recission action that had been filed against them" in the First Judicial Circuit Court in and for Santa Rosa County, Florida, to the U.S. District Court for the Northern District of Florida. Complaint ¶ 7; *see generally Schmidt v. Schmidt*, No. 21-cv-00880 (N.D. Fla. July 2, 2021) (Wetherell, J.). After removing the case to federal court, the Plaintiffs

---

[1] Fernstrom is appearing as Trustee of the Whiteacre Asset Trust.
[2] The Motion is ripe for adjudication. *See* Response in Opposition to Motion to Compel Arbitration ("Response") [ECF No. 12]; Reply in Support of Motion to Compel Arbitration ("Reply") [ECF No. 13].

"entered into a retainer agreement with [the Firm] to . . . represent their interests as defendants" in that lawsuit. *Id.* ¶ 8. Our Defendants, Antúnez and Martinez-Lejarza, "are partners in the [Firm]" and appeared on the Plaintiffs' behalf in the federal case. *Ibid.*

On April 4, 2022, Judge Wetherell remanded the Plaintiffs' deed-recission action "back to Santa Rosa County Circuit Court." *Id.* ¶ 9. Relations between the parties quickly deteriorated thereafter. The Plaintiffs terminated the Agreement with the Firm on April 29, 2022, and "a disagreement arose regarding fees that the Law Firm had billed to Plaintiffs." *Id.* ¶ 10. Since the Agreement "contained a provision that any billing disputes would be adjudicated in an arbitration conducted by the American Arbitration Association ('AAA')," Defendant Antúnez filed an arbitration demand with the AAA on October 5, 2022. *Id.* ¶¶ 11–12. This arbitration demand included a copy of the Agreement between the Plaintiffs and the Firm, which also "contained descriptions of client conversations, research conducted, and litigation strategy" and was supposed to remain "confidential" under the AAA's rules and Florida law. *Id.* ¶¶ 14–15; *see also id.* ¶ 36 ("Rule 2.420 of the Florida Rules of Judicial Administration . . . requires that certain classes of privacy-protected records that are entered into the judicial record keeping system, such as Plaintiffs' attorney-client information, be kept confidential.").

According to the Plaintiffs, however, this "confidential" information was repeatedly and publicly shared by the Defendants. On October 17, 2022, Defendant Antúnez purportedly filed the arbitration demand—which "included Plaintiffs' Retainer Agreement with the Law Firm and all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation strategies"—in three separate state-court cases in Santa Rosa County without making any "attempt to place Plaintiff's confidential attorney-client records under seal[.]" *Id.* ¶ 20. When the Plaintiffs confronted Defendant Antúnez about these filings, he "claimed he had done so in order to put Plaintiffs on notice of the Arbitration Demand he had submitted to AAA." *Id.* ¶ 21.

Then, on June 12, 2023, Defendant Martinez-Lejarza again filed a copy of the entire Agreement (with the same "privileged attorney-client information") in another (fourth) state-court case in Miami-Dade County "without satisfying her obligation to ensure that her filing was done in a confidential manner." *Id.* ¶ 27. The Plaintiffs have brought a single "invasion of privacy" claim against the Defendants based on the Defendants' alleged publication of the "Plaintiffs' privileged attorney-client records four different times in Florida court dockets without their permission or consent[.]" *Id.* ¶ 28.

## THE LAW

In 1925, "Congress enacted the Federal Arbitration Act to overcome 'the judiciary's long-standing refusal' to enforce arbitration agreements and, in particular, to place such agreements 'upon the same footing as other contracts.' The Act thus aimed to 'make arbitration agreements as enforceable as other contracts, but not more so.'" *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1215–16 (11th Cir. 2021) (Newsom, J., concurring) (first quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up); and then quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

"Section 2, the primary substantive provision of the Act, provides, in relevant part, as follows: 'A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2 (cleaned up)). The Supreme Court has "described this provision as reflecting both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Ibid.* (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them

3

according to their terms[.]" *Ibid.* (first citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); and then citing *Volt Info. Scis.*, 489 U.S. at 468).

The Eleventh Circuit has "recognized that the FAA creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014)). So, "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr.*, 561 U.S. at 68–69). At the same time, "'while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Bazemore*, 827 F.3d at 1329 (quoting *Dasher*, 745 F.3d at 1116).

As with any other contract, "a party will not be required to arbitrate where it has not agreed to do so." *Valiente v. StockX, Inc.*, 2022 WL 17551090, at *2 (S.D. Fla. Dec. 9, 2022) (Bloom, J.) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) (Cooke, J.), *aff'd*, 433 F. App'x 842 (11th Cir. 2011)). "It is axiomatic that the determination of whether the parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution." *Ibid.* (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). "It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Ibid.* (cleaned up); *see also Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("As the [FAA] makes clear, arbitration is a creature of contract. *Parties must agree to arbitrate in the first instance*, and may contractually limit or alter the issues to be presented to the arbitrators, the scope of the award, and, as here, the form of the award." (emphasis added)). And, in deciding whether the parties agreed to arbitrate their claims, the Eleventh

4

Circuit has adopted the view of "sister circuits that a summary judgment-like standard is appropriate and [held] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1333 (quoting FED. R. CIV. P. 56(a)).

## ANALYSIS

The Defendants are asking us to stay this case and compel the Plaintiffs to submit to arbitration. Their argument proceeds in two parts. *First*, the Defendants say that they can avail themselves of the Agreement's arbitration clause—even though they aren't personally signatories to the Agreement—because they "are both officers, directors, and agents of the Law Firm, and assumed duties and obligations to the Plaintiffs under the Engagement Agreement." Motion at 9. *Second*, the Defendants contend that "[t]ort actions, such as Plaintiffs' invasion-of-privacy claim, are proper subjects for arbitration where, as in this case, the parties' contractual arbitration agreement provides for the arbitration of disputes 'relating to' the subject of the contract, and the tort claim is, as in this case, based on duties that are dependent upon the existence of the unique contractual relationship between the parties." *Ibid.* Assuming (without deciding) that the Defendants can compel arbitration under the terms of the Agreement, we *still* deny their Motion because the Plaintiffs' invasion-of-privacy claim clearly falls outside the scope of the Agreement's arbitration clause.

A motion to compel arbitration cannot be granted unless the parties "[have] agreed to arbitrate an issue," since "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The Eleventh Circuit has held that "state law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). "Under both federal and Florida law, there are

5

three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (Altonaga, J.) (citing *Marine Env't Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003)). The sole issue before us is whether "an arbitrable issue exists[.]" *Ibid.*[3]

To determine the scope of the arbitration clause, we look to its text. As we explained in a recent decision:

> The scope of an arbitration clause "falls within the category of 'gateway matters' which the Supreme Court has instructed us that courts and not arbitrators should decide[.]" *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1027 (11th Cir. 2003) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). As with any other contractual provision, we look to the plain language of the arbitration clause to determine its scope. *See Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) ("The intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration."). And, if there's any ambiguity in the language of the clause, we resolve that ambiguity in favor of arbitration. *See ibid.* ("Courts generally favor such provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration."); *see also Granite Rock Co.*, 561 U.S. at 298 ("The first principle is that where, as here, parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." (cleaned up)).

---

[3] The other two factors aren't relevant here. The parties agree that there's a written agreement containing an arbitration clause—though they dispute whether that agreement is between the parties. *Compare* Motion at 1 ("Consequently, the January 14, 2022 Engagement Agreement—containing the broadly-stated arbitration clause underlying this motion—is the operative agreement referred to herein[.]"), *with* Response at 5 ("[T]he retainer agreement . . . contains the arbitration clause which Defendants seek to invoke[.]"). And the Plaintiffs never argue that the Defendants waived their right to arbitrate. *See* Response at 7 ("[T]his element is moot because [the Defendants] have no arbitration right to waive."); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

*Prof. Consulting Servs. S.A.S. v. Inmigracion Pro, LLC*, 2024 WL 4103919, at *5 (S.D. Fla. Sept. 6, 2024) (Altman, J.).

> Our Agreement's arbitration clause reads as follows:
>
> This agreement contains provisions requiring arbitration of any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under this engagement agreement, including, but not limited to, any controversy or claim in any way involving allegations of malpractice.

Agreement [ECF No. 7-1] at 6. The Defendants argue that the arbitration clause is sufficiently broad to encompass "[t]ort actions, such as the Plaintiffs' invasion-of-privacy claim," because "[t]he duties of confidentiality Plaintiffs allege that Defendants violated in this action would not have existed but for the parties' attorney-client relationship, a relationship memorialized and governed by the [Agreement]." Motion at 9–10. The Plaintiffs respond that the "Defendants' alleged publication of Plaintiffs' private information cannot reasonably be construed to fall within the ambit of 'legal services or other services provided under' the Agreement[.]" Response at 7.

We agree with the Plaintiffs. Although the Defendants have dutifully recited the relevant legal principles, we don't think they've accurately applied them to the circumstances of our case. The use of the phrase "arising out of or relating to" indicates that an arbitration clause is "broad"—but not so broad as to "requir[e] arbitration of any dispute between [the parties] or claim by either party to the contract against the other." *Telecom Italia*, 248 F.3d at 1114 (cleaned up). "The Eleventh Circuit has held that these kinds of arbitration clauses (*viz.*, clauses with language that's tied to the contract's *execution*) apply when 'the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties.'" *Prof. Consulting Servs.*, 2024 WL 4103919, at *5 (quoting *Telecom Italia*, 248 F.3d at 1116); *see also Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 637 (Fla. 1999) ("The addition of the phrase 'relating to' to the phrases 'arising out of' or 'under,' has been construed as broadening the scope of the arbitration provision. . . . [T]he test for determining arbitrability of a particular claim under a broad arbitration provision is whether a 'significant relationship' exists between the claim and

7

the agreement containing the arbitration clause, regardless of the legal label attached to the dispute (i.e., tort or breach of contract)." (citing *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93–94 (4th Cir. 1996))); *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021) ("'[T]here must be some direct relationship between the dispute and the performance of duties specified by the contract in order to find that the dispute arises out of, relates to, or is connected to the underlying agreement." (cleaned up)).

The central allegation in the Complaint is that the Defendants filed "all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation strategies," in four separate state-court cases without the Plaintiffs' permission. Complaint ¶ 20; *see also id.* ¶¶ 31–33 (same). The Agreement's arbitration clause, by its own terms, applies to "any controversy or claim arising out of or related to" the following: (1) "fees"; (2) "costs"; or (3) "any legal services or other services provided under this engagement agreement"—which includes, but is not limited to, "any controversy or claim in any way involving allegations of malpractice." Agreement at 6; *see also McGuire v. Marshall*, 50 F.4th 986, 1007 (11th Cir. 2022) ("Under [the negative-implication canon], when a [drafter] has enumerated a list or series of related items, the [drafter] intended to exclude similar items not specifically included in the list." (cleaned up)).

Our dispute obviously has nothing to do with fees or costs, *see generally* Complaint,[4] so arbitration would be appropriate only if the Plaintiffs' claim relates to "any legal services or other services provided under [the Agreement]," Agreement at 6. We find that it does not. The Complaint is quite clear that the Defendants disseminated the Plaintiffs' "private facts" *after* the "Plaintiffs terminated their Agreement with the Law Firm, and [the Defendants] withdrew their appearances in

---

[4] By contrast, the ongoing arbitration proceedings between the Plaintiffs and the Firm *do* involve a fee dispute. *See* Complaint ¶¶ 10–12 ("[A] disagreement arose regarding fees that the Law Firm had billed to Plaintiffs. . . . On October 5, 2022[,] Atty. Antúnez filed a 'Commercial Arbitration Rule Demand for Arbitration . . . with AAA.'").

Santa Rosa County Circuit Court." Complaint ¶ 10. So, the Defendants could not have been providing "legal services"—or any other service—to the Plaintiffs "under this engagement agreement" when they docketed the "Plaintiffs' confidential billing records," because they were no longer representing them *under* the Agreement. *Id.* ¶ 20. The Plaintiffs also never allege that the Defendants committed legal malpractice, *see generally* Complaint, nor could they have, since all of the Defendants' allegedly unlawful acts took place *after* the Agreement was terminated and *after* the attorney-client relationship between the parties was dissolved. *See Lane v. Cold*, 882 So. 2d 436, 438 (Fla. 1st DCA 2004) ("With respect to establishing [legal malpractice], it is not sufficient merely to show that an attorney-client relationship existed between the parties, *it is essential that the plaintiff show that the relationship existed with respect to the acts or omissions upon which the malpractice claim is based*." (emphasis added)). The Agreement's arbitration clause thus doesn't apply here because the Plaintiffs' invasion-of-privacy claim doesn't bare a "significant relationship" to the contractual obligations the Agreement imposed on the parties. *Seifert*, 750 So. 2d at 637.

But the Defendants' Motion fails for yet another reason. The Plaintiffs *also* allege that the publication of their confidential materials on these state-court dockets "violates Rule 2.420 of the Florida Rules of Judicial Administration" *and* runs counter to FLA. STAT. § 90.502—which "makes clear that a communication between lawyer and client is confidential and is not to be disclosed without the client's permission." *Id.* ¶¶ 47–48. Since the Defendants' alleged actions would have breached the duties the Defendants owed the Plaintiffs under state law—even *without* any formal retainer agreement—the Plaintiffs' invasion-of-privacy claim *isn't* significantly related "to [the] performance of duties specified by the contract[.]" *Telecom Italia*, 248 F.3d at 1116; *see also, e.g., Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1349 (11th Cir. 2008) ("But here . . . International could have breached its bond commitment and defrauded Triple I even if there had been no escrow agreement at all. Triple I's claims are not related—with at least some directness—to the performance of duties

9

specified in the escrow agreement."); *Prof. Consulting Servs.*, 2024 WL 4103919, at *5 ("[T]hese types of arbitration clauses don't apply to claims that *could have* arisen if the contract never existed[.]").

It's true (of course) that the Defendants only possessed the Plaintiffs' confidential information because the Plaintiffs entered into a retainer agreement with the Firm. But a causal relationship between the Plaintiffs' claim and the Agreement doesn't mean that there's "some direct relationship between the dispute and the performance of duties specified by the contract." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011). Indeed, both the Eleventh Circuit *and* the Florida Supreme Court have held that "[t]he relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties." *Seifert*, 750 So. 2d at 640 (quoting *Dusold v. Porta-John Corp.*, 807 P.2d 526, 530 (Ariz Ct. App. 1990)); *see also id.* at 642 ("While it is certainly true that this dispute would not have arisen but for the sales agreement between U.S. Home and the Seiferts, we conclude that the mere existence of such contract is not sufficient to compel that this dispute be arbitrated."); *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1568 (11th Cir. 1984) ("While certainly there is a connection between Armada's claims and the charter party relationship between Armada and Interbulk—*i.e.,* but for the two parties having entered into this business arrangement which was imperfectly performed, there would have been no wrongful attachment and conversion—such connection is not sufficiently close to constitute a dispute arising during the execution, or performance, of the charter party itself.").

The Defendants needed to show that the Plaintiffs' claim was "an immediate, foreseeable result of the performance of contractual duties," *Telecom Italia*, 248 F.3d at 1116, and that there was "some direct relationship between the dispute and the performance of duties specified by the contract," *Hearn*, 992 F.3d at 1213. As we've said, the Defendants have failed to meet that burden here because (1) the Defendants' alleged conduct falls outside the scope of the arbitration clause, and (2) the Plaintiffs' claim exists independently of the contractual obligations the Agreement imposed on

10

the parties. *See Seifert*, 750 So. 2d at 640 ("However, because the wrongful death action here is predicated upon a tort theory of common law negligence unrelated to the rights and obligations of the contract, petitioner asserts such an action was not contemplated by the parties when the contract was made and should not be subject to arbitration."); *Int'l Underwriters AG*, 533 F.3d at 1349 ("But here . . . International could have breached its bond commitment and defrauded Triple I even if there had been no escrow agreement at all. Triple I's claims are not related—with at least some directness—to the performance of duties specified in the escrow agreement."). Since the Plaintiffs' invasion-of-privacy claim falls outside the scope of the Agreement's arbitration clause, the Defendants' motion to compel arbitration must be denied.

## CONCLUSION

After careful review, we hereby **ORDER and ADJUDGE** that the Defendants' Motion to Compel Arbitration [ECF No. 7] is **DENIED**. The Defendants shall file their answer to the Plaintiffs' Complaint [ECF No. 1] within **fourteen days** of the entry of this Order.

**DONE AND ORDERED** in the Southern District of Florida on September 13, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record