**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-22464-ALTMAN**

**JANET L. SCHMIDT** *and*
**JOHN R. FERNSTROM, AS TRUSTEE**
**OF WHITEACRE ASSET TRUST,**

      *Plaintiffs*,

*v.*

**JUAN C. ANTÚNEZ** *and*
**KIMBERLY MARTINEZ-LEJARZA,**

      *Defendants.*

_____/

**ORDER GRANTING MOTION TO DISMISS**

Our Plaintiffs, Janet L. Schmidt and John R. Fernstrom, allege that the Defendants, Juan C. Antúnez and Kimberly Martinez-Lejarza, disclosed confidential information without the Plaintiffs' consent by filing certain documents in multiple court proceedings. *See generally* Amended Complaint ("Complaint") [ECF No. 69]. In their Complaint, the Plaintiffs advance two claims: (1) Invasion of Privacy against both Antúnez and Martinez-Lejarza (Count I); and (2) Abuse of Process against Antúnez only (Count II). *See id.* ¶¶ 36–89.

The Defendants have moved to dismiss the Complaint, arguing that the Plaintiffs' claims are barred by Florida's litigation privilege. *See* Motion to Dismiss (the "Motion") [ECF No. 76] at 8 ("[The] Plaintiffs' allegations of impropriety all surround the garden-variety act of filing documents in court proceedings. These are *precisely* the types of acts that are protected by Florida's litigation privilege."). The Motion is now fully briefed and ripe for adjudication. *See* Plaintiffs' Response in Opposition to the Motion (the "Response") [ECF No. 80]; Defendants' Reply in Support of the Motion (the "Reply") [ECF No. 85]. After careful review, we **GRANT** the Motion.

### THE FACTS

In July 2021, the "Plaintiffs removed a deed rescission action that had been filed against them in the District Court for Santa Rosa County, Florida to the U.S. District Court for the Northern District of Florida[.]" Complaint ¶ 7. In August 2021, the Plaintiffs retained the Miami law firm of Stokes McMillan Antúnez Martinez-Lejarza P.A. (the "Law Firm") to "represent their interests as defendants in the above Federal litigation of the Deed Rescission." *Id.* ¶ 8. The Defendants, "who are partners in the Law Firm," represented the Plaintiffs. *Ibid.* In April 2022, the deed rescission case was remanded to state court. *See id.* ¶ 9. That same month, the Plaintiffs "terminated their agreement with the Law Firm, and Antúnez and Martinez-Lejarza withdrew their appearances as counsel[.]" *Id.* ¶ 10. Shortly after the Plaintiffs terminated their agreement with the Law Firm, "a disagreement arose regarding fees that the Law Firm had billed to [the] Plaintiffs." *Ibid.*

Since the Law Firm's retainer agreement "contained a provision that any billing disputes would be adjudicated in an arbitration conducted by the American Arbitration Association ('AAA')," *id.* ¶ 11, Antúnez filed a "Commercial Arbitration Rule Demand for Arbitration ('Arbitration Demand')," *id.* ¶ 12. The Arbitration Demand included "a copy of [the] Plaintiffs' Retainer Agreement and copies of all of [the] Plaintiff[s'] invoices ('Billing Records'), which contained [the] Plaintiffs' entire billing history, as well as descriptions of client conversations, research conducted, and litigation strategy." *Id.* ¶ 14.

"Despite having previously submitted his Arbitration Demand in confidence to [the] AAA," *id.* ¶ 17, Antúnez filed the Arbitration Demand (containing the Billing Records) in three different state-court cases, *see id.* ¶¶ 17, 19, 21 (identifying the three cases in Santa Rosa County Circuit Court in which Antúnez filed the Arbitration Demand (the "Santa Rosa Cases")).[1] "When Antúnez was

---

[1] The Defendants were the Plaintiffs' counsel in the three Santa Rosa Cases until April 29, 2022, when they "withdrew their appearances." Complaint ¶ 10; *see also* Motion at 3 ("Ms. Schmidt alleges that the

confronted about his filing of [the] Plaintiffs' Retainer Agreement and Billing Records in the [Santa Rosa Cases], Antúnez claimed he had done so to effect service of process on [the Plaintiffs] in order to give them notice of the Arbitration Demand he had submitted to [the] AAA." *Id.* ¶ 24.

After Antúnez filed the Arbitration Demand in the Santa Rosa Cases, the Plaintiffs "filed a complaint against the Law Firm for Declaratory Judgment–Breach of Contract and for Breach of Fiduciary Duty [ ] in Miami-Dade County Circuit Court [the "Miami-Dade Case"]." *Id.* ¶ 26. "In the course of the Miami-Dade Case," Martinez-Lejarza, as counsel for the Law Firm, filed a motion to compel arbitration, which included "the same Retainer Agreement and Billing Records that her partner, Antúnez, had filed in the three cases in Santa Rosa County Circuit Court months earlier." *Id.* ¶¶ 28–29. The Plaintiffs' allegedly confidential records, filed by the Defendants, "were, and still are, accessible to both [the] Plaintiffs' adversaries . . . and the public at large." *Id.* ¶ 35.

### THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

---

arbitration demand was improperly filed by Mr. Antúnez in the three actions in which the Firm appeared.").

## ANALYSIS

The Defendants contend that they cannot be sued for their state-court filings because the act of filing documents in judicial proceedings is "precisely the type of act[] that [is] protected by Florida's litigation privilege." Motion at 8 (emphasis omitted). We agree.

"The Florida Supreme Court has explained that 'absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding.'" *Grippa v. Rubin*, 133 F.4th 1186, 1193 (11th Cir. 2025) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)). "In recognition of the necessity for the free flow of information, courts have not imposed a strict relevancy test in determining whether a statement made during the course of a judicial proceeding is entitled to immunity so long as the statement has some relation to the proceeding." *James v. Leigh*, 145 So. 3d 1006, 1008 (Fla. Dist. Ct. App. 2014) (cleaned up). Importantly, for our purposes, "Florida courts have extended this immunity to counsel." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 872 (11th Cir. 2019) (citing *Levin*, 639 So. 2d at 608).

"Whenever the Florida Supreme Court has applied the *absolute* litigation privilege, the relevant statements were made either in front of a judicial officer or in pleadings or documents filed with the court or quasi-judicial body because these settings were uniquely equipped with safeguards that protected both [parties'] interests." *Grippa*, 133 F.4th at 1194 (cleaned up & emphasis added). Ex-parte, out-of-court statements that are "related to the underlying lawsuit and [] made without express malice," on the other hand, are only entitled to "*qualified* litigation privilege." *Id.* at 1198 (emphasis added). "Unlike the absolute privilege, the qualified litigation privilege is a defense to liability that applies only upon the jury's finding of certain facts." *Ibid.* Because the Defendants' allegedly tortious conduct occurred "in front of a judicial officer or in pleadings or documents filed with the court or quasi-judicial body," *id.* at 1194, this case implicates the *absolute* litigation privilege.

4

In sum, for Florida's absolute litigation privilege to apply, the Defendants' allegedly tortious conduct must have "occurr[ed] during the course of a judicial proceeding" and must bear "some relation to [that] proceeding[]." *Id.* at 1193. We find that the Defendants' filings meet both elements.

*First*, it's undisputed that the filings occurred "during the course of judicial proceedings" because they were filed on public court dockets, presided over by judicial officers. *See* Complaint ¶ 17 ("Antúnez took the same Arbitration Demand . . . and caused it to be filed in the docket of CASE NUMBER 572020CP000039[.]"); *id.* ¶ 19 ("Antúnez took the same Arbitration Demand . . . and caused it to be filed in the docket of CASE NUMBER 572020CP000520[.]"); *id.* ¶ 21 ("Antúnez also took the same Arbitration Demand . . . and caused it to be filed in the docket of CASE NUMBER 572023CA000530[.]"); *id.* ¶¶ 28–29 ("In the course of the Miami-Dade Case, Martinez-Lejarza [ ] filed another pleading entitled 'Renewed Motion to Compel Arbitration and Stay Action,'" which included "the same Retainer Agreement and Billing Records that her partner, Antúnez, had filed in the three cases in Santa Rosa County Circuit Court months earlier.").

As the Defendants observe, the Plaintiffs could've taken any number of steps to remedy their alleged harm without resorting to collateral litigation. *See* Motion at 17–18 ("Ms. Schmidt could have taken multiple actions to remedy the perceived wrong within that self-contained litigation. For example, she could have: [s]ought to strike the purported subject filing; [s]ought to redact whatever she believed was privileged; [h]ave the document marked confidential in its entirety; [s]ought disqualification of opposing counsel; [s]ought sanctions against [the] Defendants or the [Law] Firm."). The availability of these other remedies is precisely why absolute immunity typically applies to conduct that occurs "during the course of judicial proceedings." *See Grippa,* 133 F.4th at 1194 (explaining that the absolute litigation privilege applies to conduct "either in front of a judicial officer or in pleadings or documents filed with the court or quasi-judicial body," because these settings are equipped with safeguards arising from "the comprehensive control exercised by the trial judge whose action is

5

reviewable on appeal and the availability of other remedies through which the trial court could mitigate the harm that may occur" (cleaned up)). Instead, the Plaintiffs pursued collateral civil litigation—exactly what the privilege is intended to prevent. *See AGM Inv'rs., LLC v. Bus. Law Grp., P.A.*, 219 So. 3d 920, 924 (Fla. Dist. Ct. App. 2017) ("The privilege reflects a policy judgment that in most cases participants in litigation must be free to engage in unhindered communication and to use their best judgment in prosecuting or defending a lawsuit without fear of civil liability notwithstanding the potential harm to an individual on the receiving end of a defamatory statement or other bad act.").

*Second*, we must determine whether the filings are "related to" the underlying proceedings. No binding (or even persuasive) authority has clearly defined what it means for conduct to be "related to" a judicial proceeding—other than the Florida First District Court of Appeal's observation that courts don't "impose a strict relevancy test" in determining whether conduct "relates to" an underlying proceeding. *James*, 145 So. 3d at 1008. Still, we aren't totally in the dark. The Eleventh Circuit has observed that "the ordinary meaning of [relating to] is 'a broad one' . . . across a range of contexts." *AQuate II LLC v. Myers*, 100 F.4th 1316, 1321 (11th Cir. 2024) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "related" as "[c]onnected in some way; having relationship to or with something else"). With this broad definition in mind, we conclude that the Defendants' filings were "related to" the judicial proceedings in which they were submitted.

Martinez-Lejarza's filing of the motion to compel arbitration presents an easy case. The Miami-Dade Case involved a dispute between the Plaintiffs and the Law Firm (represented by Martinez-Lejarza) in which the Law Firm sought to compel arbitration. *See* Complaint ¶¶ 26–27 ("[The] Plaintiffs, on April 11, 2023, filed a complaint against the Law Firm for Declaratory Judgment–Breach of Contract and for Breach of Fiduciary Duty [ ] in Miami-Dade County Circuit Court[.] . . . Martinez-Lejarza entered her appearance in the case by filing a Motion to Compel Arbitration and Stay

6

Action."). Martinez-Lejarza's motion to compel arbitration (including its exhibits) thus plainly "relates to" the underlying proceedings the Law Firm sought to arbitrate. *See* Motion at 15 ("Plainly—and ostensibly from the title of the motion itself—the filing of the motion in a court proceeding was related to the underlying proceedings."). Filing a motion in an ongoing judicial proceeding is a paradigmatic example of the kind of routine litigation activity the privilege is intended to protect. *See Leafwell, Inc. v. The DOC App, Inc.*, 2026 WL 1109413, at \*8 (M.D. Fla. Apr. 24, 2026) (Steele, J.) ("[F]iling a complaint or motion falls within the litigation privilege.").

Antúnez's filing of the Arbitration Demand poses a more difficult question. The Santa Rosa Cases were the deed rescission actions in which the Defendants had previously represented the Plaintiffs and from which the parties' billing dispute arose. *See* Complaint ¶ 10 ("On or about April 29, 2022, [the] Plaintiffs terminated their Agreement with the Law Firm, and Antúnez and Martinez-Lejarza withdrew their appearances as counsel in the three Santa Rosa County Circuit Court cases in which they were representing [the] Plaintiffs. Shortly thereafter, a disagreement arose regarding fees that the Law Firm had billed to [the] Plaintiffs."); *see also* Motion at 2 ("The Firm sought to compel arbitration in order to adjudicate the fee dispute [arising from the Santa Rosa Cases]."). On the one hand, the Arbitration Demand was superfluous to the resolution of the underlying deed rescission actions and was only filed to notify the Plaintiffs of a *different* dispute. *See* Motion at 8 ("Mr. Antúnez, on behalf of his Firm, filed the arbitration demand in actions which the Firm had previously appeared in order to provide notice to Plaintiffs of an arbitration demand seeking recovery of attorney's fees incurred in those various lawsuits."). On the other, the Arbitration Demand and Billing Records arose *directly* from the Defendants' prior representation of the Plaintiffs in the Santa Rosa Cases. That the Arbitration Demand sought to vindicate the Defendants' rights in a separate proceeding doesn't render it "unrelated" to the proceedings from which it indisputably arose.

While it wasn't *entirely* unreasonable for Antúnez to believe that filing the Arbitration Demand in the cases from which the arbitrable dispute arose was appropriate, we agree with the Plaintiffs that it was an odd and improper method of effecting service. But the Plaintiffs' argument that the litigation privilege cannot be invoked when Florida law "prohibits" the conduct at issue misapprehends the privilege's basic function: The privilege exists precisely to protect otherwise tortious or unlawful conduct. *See Grippa*, 133 F.4th at 1195 ("In arguing that he is entitled to the privilege, Rubin does not engage with the merits of Grippa's claim. In fact, if he were immune from suit, he could admit to the underlying allegations against him and still avoid liability."); *see also Madura*, 767 F. App'x at 872 ("Florida's litigation privilege also applies to claims of fraudulent conduct during a judicial proceeding." (citing *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1275–77 (11th Cir. 2004)). That, in fact, is the whole point of an immunity defense—it forecloses liability regardless of the lawfulness of the underlying conduct. The question of the applicability of the litigation privilege, in short, has nothing to do with whether the Defendants' conduct was lawful or proper. In assessing the viability of the privilege defense, we ask only whether the conduct occurred during the course of judicial proceedings and whether it was related to those proceedings. Since the filings *did* occur during the course of judicial proceedings and *were* related to those proceedings, the Defendants' allegedly tortious conduct is protected by Florida's litigation privilege.

* * * *

The Plaintiffs advance several attacks against this conclusion—all unpersuasive. *First*, they contend that, because Antúnez had withdrawn as counsel in the Santa Rosa Cases, "[t]he privilege's rationale has no application to his conduct." Response at 13; *see also ibid.* ("The privilege presupposes that the person invoking it had some legitimate role in the proceeding in question—as a party, counsel, witness, or other recognized participant. That premise is absent here."). But the Plaintiffs cite no

authority for this proposition.[2] And courts *have* found that a client's former lawyers *are* entitled to the protections of the litigation privilege. *See, e.g.*, *Jackson*, 372 F.3d at 1274 (affirming the application of the litigation privilege where the relevant judicial proceeding had concluded and where the defendant-lawyers no longer represented the plaintiff-clients); *Cassuto v. Shulick*, 2007 WL 1705669, at *2–3 (S.D.N.Y June 11, 2007) (applying New York's judicial proceedings privilege to bar claims alleged against "an attorney formerly involved in litigation" who had since been "relieved" as counsel); *see id.* at 3 ("[W]hen former counsel to litigation continues to involve themselves in actual proceedings, the privilege still applies."); *Golden v. Stein*, 2019 WL 8301702, at *6–8 (S.D. Iowa Dec. 17, 2019) (applying Iowa's litigation privilege to bar a breach-of-fiduciary-duty claim against an attorney-defendant made "after termination of attorney-client relationship").[3]

*Second*, the Plaintiffs insist that the Defendants' justification for their filings—effectuating notice of the Arbitration Demand—is "expressly" prohibited by "Florida Rule of General Practice and Judicial Administration 2.516([b])." Response at 11. And, according to the Plaintiffs, "[a]n attorney cannot invoke as a litigation-privilege justification a purpose that Florida law expressly prohibits the chosen mechanism from accomplishing." *Ibid.* This argument fails for three reasons. *One*, Rule 2.516(b) doesn't include the Plaintiffs' alleged "express" prohibition. If anything, the rule appears to permit the service of documents through the state's e-filing system. *See* Fla. R. Gen. Prac. & Jud.

---

[2] This is a recurring problem. The Plaintiffs only cite one case, *Levin*, in sections A–F of their Response. *See* Response at 8–14. And they never even purport to identify a similar case in which the litigation privilege didn't apply.

[3] We recognize that courts generally apply the litigation privilege to *current* participants in an underlying proceeding and that Antúnez was no longer serving as counsel in the Santa Rosa Cases when he filed the Arbitration Demand. But the Plaintiffs haven't identified any authority that would bar the application of the privilege in our circumstances. Moreover, the test Florida courts and the Eleventh Circuit have deployed, coupled with the specific facts of this case (Antúnez's status as former counsel, the relationship between the conduct and the underlying proceedings, and the fact that the conduct occurred in a judicial forum and was subject to judicial safeguards), favor Antúnez's request for immunity.

Admin 2.516(b)(1) ("A filer of an electronic document has complied with this subdivision if the Florida Courts e-filing Portal [ ] or other authorized electronic filing system with a supreme court approved electronic service system [ ] served the document by email or provided a link by e-mail to the document on a website maintained by a clerk[.]"). *Two*, whether the Arbitration Demand was properly served is beyond the scope of our inquiry. As we've said, the litigation-privilege test asks *only* whether the allegedly tortious conduct "occur[ed] during the course of a judicial proceeding" and bore "some relation to [that] proceeding[.]" *Grippa*, 133 F.4th at 1193. Whether service complied with Rule 2.516(b) is thus immaterial to our analysis. *Three*, and again, whether an alleged tortfeasor's conduct was actually prohibited or unlawful isn't relevant. The absolute litigation privilege, being an immunity defense, forecloses liability regardless of the lawfulness of the underlying conduct.

*Third*, the Plaintiffs maintain that the privilege shouldn't apply because they've "allege[d] that the challenged conduct was undertaken with malicious intent." Response at 17. But "[t]ruth, falsity, *intent*, and harm . . . have no impact on the applicability of the absolute privilege. All that matters is whether the statement was made in the course of judicial proceedings and was related to those proceedings." *Grippa*, 133 F.4th at 1195–96 (cleaned up & emphasis added); *see also James*, 145 So. 3d at 1008 ("The falsity or maliciousness of these statements is irrelevant to the application of the privilege.").

*Fourth*, the Plaintiffs argue that, "because abuse of process necessarily requires the misuse of a judicial mechanism, every abuse of process claim arises from acts occurring during the course of a judicial proceeding. Categorical application of the privilege would therefore abolish the tort." Response at 16–17. But the Eleventh Circuit has already addressed—and rejected—this argument. *See EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019) ("The litigation privilege applies to actions for abuse of process." (citing *LatAm Invs., LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 242 (Fla. Dist. Ct. App. 2011))); *see also id.* at 635 n.8 (explaining why courts applying Florida law "must

apply the litigation privilege to abuse of process claims"); *Burnett v. Davidoff*, 2025 WL 2105772, at *4 (S.D. Fla. July 28, 2025) (Bloom, J.) (applying the litigation privilege to bar an abuse-of-process claim).

*Finally*, the Plaintiffs advance the bizarre position that, because the Defendants previously denied some of the Plaintiffs' allegations, they cannot now invoke the litigation privilege. *See* Response at 10–11 ("[The Defendants' assertion of the litigation privilege] rests on an unstated premise that the filings actually occurred as described in the Amended Complaint, which Defendants themselves denied in their Answer."). We won't spill much ink on this argument. At the motion-to-dismiss stage, we "accept all factual allegations in a complaint as true," including the Plaintiffs' allegations that the relevant documents were indeed filed in the Santa Rosa Cases. *Dusek*, 832 F.3d at 1246. That the Defendants previously denied aspects of these allegations in their Answer to the Plaintiffs' First Complaint [ECF No. 30] is thus irrelevant here.

## CONCLUSION

"Florida law recognizes an absolute privilege for conduct occurring during the course of a judicial proceeding." *Grippa*, 133 F.4th at 1193. The Defendants' allegedly tortious conduct occurred during judicial proceedings in the Santa Rosa and Miami-Dade Cases and bore some relation to those proceedings. Their conduct, therefore, is protected by Florida's litigation privilege.

After careful review, therefore, we **ORDER** and **ADJUDGE** as follows:

1. The Defendants' Motion to Dismiss [ECF No. 76] is **GRANTED**.

2. The Plaintiffs' Complaint [ECF No. 69] is **DISMISSED** *with prejudice*.[4]

---

[4] Courts routinely dismiss claims that are barred by the absolute litigation privilege with prejudice because no amendment could save a claim from which the defendant is immune. *See Jackson*, 372 F.3d at 1262 (affirming a district court's dismissal of a plaintiff's state-law claim with prejudice as barred by Florida's litigation privilege); *EMI Sun Vill., Inc.*, 779 F. App'x at 636 (affirming a district court's dismissal of an abuse-of-process claim with prejudice as barred by Florida's litigation privilege); *Burnett*, 2025 WL 2105772, at *5 (applying the litigation privilege to dismiss an abuse-of-process claim with prejudice). We do the same here.

3. The Clerk is directed to **CLOSE** this case.

4. All pending deadlines are **TERMINATED** and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on July 28, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

12